IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **D&M EDWARDS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:08-CV-0670-L** |
| | § | |
| **BIO-CIDE INTERNATIONAL, INC.,** | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion to Dismiss, filed April 25, 2008. After careful consideration of the motion, briefs, response, reply, record, and applicable law, the court **denies without prejudice** Defendant's Motion to Dismiss.

### I.  Procedural and Factual Background

This case arises out of a dispute involving payment of commissions on the distribution of a food processing product. In 2000, Ron Reich ("Mr. Reich"), food processing sales manager for Bio-Cide International Inc. ("Bio-Cide"), contacted Paul Edwards ("Mr. Edwards") regarding Bio-Cide's products and potential applications. Mr. Reich knew Mr. Edwards because they previously worked together. The two were, and continue to be, close friends. During the conversation, Mr. Edwards agreed to test market a product similar to Bio-Cide's and to develop an application for Bio-Cide's product for use in red meat processing.

In July 2001, Mr. Edwards created D&M Edwards, Inc. ("D&M") and became its president and principal shareholder. D&M successfully developed and test marketed an application for a product similar to Bio-Cide's for use in red meat processing. D&M then met with Bio-Cide

regarding use of the application with Bio-Cide's product for use in the food processing industry. During these meetings, D&M explained its methods and the potential economic benefits to both parties from the expanded use of Bio-Cide's product to the food processing industry.

Bio-Cide then applied for a patent that expanded its existing patent for use in other food processing. The existing patent applied only to the use of Bio-Cide's product in seafood processing. Shortly after the application, Alcide Corporation ("Alcide") sued Bio-Cide for patent infringement. Pursuant to a settlement between the parties in October 2003, Alcide granted Bio-Cide a license to use its patented technology for red meat processing. Bio-Cide then sought and received approval from the United States Drug Administration ("USDA") and the Food and Drug Administration ("FDA") to use D&M's application with Bio-Cide's product in the food processing industry.

After resolution of the lawsuit, Bio-Cide agreed that D&M was its master distributor in the food processing industry, that D&M could recruit other distributors and receive a five percent commission on their purchases, and that Bio-Cide would inform others who desired to enter the food processing market using its product that D&M was its master distributor and pay D&M five percent commission on those purchases. In an effort to reduce this agreement to a formal writing, D&M submitted numerous drafts to Bio-Cide. Bio-Cide refused to sign each draft, but never submitted a more acceptable draft agreement to D&M for its review. Bio-Cide has not paid commissions to D&M.

On March 19, 2008, D&M filed suit in state court against Bio-Cide and alleged breach of contract and breach of fiduciary duty. Bio-Cide removed the action to federal court on April 18, 2008, and filed its motion to dismiss for failure to state a claim on April 25, 2008.

## II. Standard for Dismissal Pursuant to Rule 12(b)(6)

To defeat a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). A court, however, is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### III. Discussion

Bio-Cide argues that D&M fails to state a claim upon which relief can be granted in its claims for breach on contract and breach of fiduciary duty. The court addresses the sufficiency of each of these claims.

#### A. Breach of Contract

In support of its motion to dismiss the breach of contract claim, Bio-Cide contends that although the alleged distributorship agreement is governed by the statute of frauds provision of the Uniform Commercial Code ("UCC"), it was never reduced to writing or signed.

The parties concede that the Texas UCC governs enforcement of distributorship agreements. The relevant portion of the Texas UCC's statute of frauds provision states the following:

> [A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Tex. Bus. & Comm. Code § 2.201(a) (Vernon 1994).¹ According to D&M, the distributorship agreement is evidenced by an e-mail from Bob Danner, Bio-Cide's president and chief executive officer, to Mr. Edwards. D & M attached a copy of the e-mail to its response. Bio-Cide argues that the court should not consider this e-mail because it was neither attached to nor referenced in D&M's original petition and because it contradicts the allegations in D&M's petition. The court disagrees.

With respect to this issue, D&M alleges the following:

> [After the February 3, 2004 meeting], Plaintiff sought to reduce to writing, in a more formal way, the agreement and understanding of the parties. Virtually all of its attempts were rebuffed by Defendant. Numerous drafts of such an agreement with Defendant were submitted by Plaintiff, and Defendant on each occasion objected to various provisions, including provisions concerning Plaintiff's compensation for which it had previously agreed. At no time did Defendant ever submit for Plaintiff's review a draft of any contract [that] it would sign.

Pl. Orig. Pet. 5, § XI. Bio-Cide's argument that the e-mail contradicts the allegations in D&M's petition is based solely on D&M's allegations that Bio-Cide refused to sign any version of the distributorship agreement and that it refused to provide D&M with a draft of an agreement that it would sign. This argument takes D&M's allegations out of context. D&M's opening sentence is that after the February meeting, it "sought to reduce to writing, ***in a more formal way***, the agreement and understanding of the parties." *Id.* (emphasis added). D&M does not allege that there was an oral distribution agreement. It alleges that there was an agreement that it sought to memorialize more formally. Such allegations are entirely consistent with a desire to formally document an

---

¹In this case, the court's jurisdiction is based on diversity of citizenship and amount in controversy in excess of $75,000. In diversity cases, a federal court applies the substantive law of the forum state. *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

**Memorandum Opinion and Order - Page 5**

informal, but legally binding, e-mail agreement. Accordingly, the court determines that D&M's reliance on the e-mail does not contradict its allegations.

Because the e-mail was not attached to D&M's petition, however, D&M may not rely on it to defeat a motion to dismiss for failure to state a claim. *See Collins,* 224 F.3d at 498-99 (pleadings include complaint and documents attached to it). To state a claim for breach of contract, D&M must plead sufficient facts to demonstrate, *inter alia*, the existence of a valid contract. *See Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Without amending its petition to include allegations regarding the e-mail or attaching the e-mail to its pleadings, D&M is unable to meet this burden. When viewed in the light most favorable to D&M, the allegations in its petition are insufficient to state a valid breach of contract claim. The court concludes, however, that this deficiency can be remedied and that D&M should be given an opportunity to correct the deficiency by amending its pleadings. Accordingly, the court **denies without prejudice** Defendant's Motion to Dismiss as to D&M's breach of contract claim. D&M shall replead its claim to rectify the deficiency herein noted.

### B.     Breach of Fiduciary Duty

Bio-Cide also argues that D&M's breach of fiduciary claim should be dismissed because a supplier-distributor relationship does not give rise to a fiduciary duty. D&M agrees that a supplier-distributor relationship does not give rise to a fiduciary duty, but argues that its claim is based upon a confidential relationship between it and Bio-Cide.

According to D&M, its pleadings are sufficient because the petition contained allegations to support that its undertaking with Bio-Cide was "characterized as a joint venture" and that Bio-Cide "characterized their agreement as a 'partnership.'" Pl.'s Resp. 4. The court disagrees.

Although a pleading need not contain detailed factual allegations, it must set forth more than mere labels and conclusions. *Twombly*, 127 S. Ct. at 1965. D&M also alleges that Bio-Cide stated that D&M was its "partner in this endeavor" and that the parties "agreed to go forward in a joint venture for their mutual benefit" and "spoke on numerous occasions concerning reducing their Joint Venture agreement in this process to writing." Pl.'s Pet. 4-6. These allegations are equally unavailing. A court is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC*, 401 F.3d 638 at 642. Therefore, these allegations do not demonstrate the creation of a fiduciary relationship between D&M and Bio-Cide.

D&M also contends that it pleaded facts that demonstrated a confidential relationship when it alleged that a close relationship existed between D&M and Bio-Cide because it shared confidential information with Bio-Cide and because it was introduced to Bio-Cide by its close friend, Mr. Reich. With respect to the creation of informal fiduciary relationships, Texas law is as follows:

> Texas courts characterize confidential relationships as informal fiduciary relationships that may arise where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one. In addition, confidential relationships may arise when the parties have dealt with each other in such a manner for a long period of time [and] one party is justified in expecting the other to act in its best interest. To create a confidential relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement forming the basis of the suit.

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). The court may reasonably infer that D&M trusted in and relied on Mr. Reich, that it was justified in expecting him to act in its best interests, and that the relationship existed prior to, and apart from, the agreement at issue in this case, from its allegations that Mr. Reich was and continues to be close friends with D&M's president and principal shareholder, Paul Edwards. D&M's petition, however, does not include allegations

regarding the duration of its relationship with Mr. Reich, that he was acting on behalf of Bio-Cide when he introduced D&M to it, or any allegations from which the court may reasonably infer the existence of these facts. Moreover, the allegation that D&M shared confidential information with Bio-Cide during a business transaction is insufficient to demonstrate that an informal fiduciary duty existed between the parties because any relationship that may have developed based on this disclosure did not exist prior to or apart from the agreement at issue in this case. Therefore, these allegations are also insufficient to demonstrate that a confidential relationship existed between D&M and Bio-Cide.

Like the deficiency noted with respect to D&M's breach of contract claim, the court determines that D&M should be given an opportunity to correct the defects regarding its breach of fiduciary duty claim. Accordingly, the court **denies without prejudice** Defendant's Motion to Dismiss as to this claim, and D&M shall replead to rectify the deficiencies herein noted.

**IV.    Conclusion**

For the reasons stated herein, assuming all facts alleged in D&M's petition to be true and viewing them in the light most favorable to D&M, the court determines its claims are deficient. Rather than grant the motion, the court concludes that the better approach is to allow D&M an opportunity to correct the noted deficiencies. Accordingly, the court **denies without prejudice** Defendant's Motion to Dismiss. D&M **shall replead** its claims consistent with this opinion no later than **5:00 p.m., February 4, 2009**.

**It is so ordered** this 14th day of January, 2009.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge